(76 South. 427)

LAY et al. v. HOHENBERG et al.

(7 Div. 841.)

(Supreme Court of Alabama. May 10, 1917. On Application for Modification, June 7, 1917. On Application for Modification by Appellant, June 28, 1917.)

Appeal from Chancery Court, Etowah County; W. W. Whiteside, Chancellor.

Suit between W. P. Lay and others and Adolphe Hohenberg and others. From the decree, W. P. Lay and others appeal. Corrected and affirmed, but remanded for supplemental orders necessary to carry out decree of the Supreme Court.

O. R. Hood and Dortch, Martin & Allen, all of Gadsden, and Rushton, Williams & Crenshaw, of Montgomery, for appellants. Steiner, Crum & Weil, of Montgomery, and Frank W. Lull, of Wetumpka, for appellees.

This cause was submitted under new rule 46 (65 South. vii), and the opinion of the court was prepared and delivered by Mr. Chief Justice ANDERSON.

The sole question for consideration upon this appeal involves the amount due the complainants from the proceeds of the sale of the property there involved and the relative value of the site at lock 15, as compared with the other property embraced in the sale as per the agreement entered into between the parties, and which said agreement is made a

part of the bill of complaint as Exhibit B. The complainants' theory is that the relative value of their property, which will be designated as lock or site 15, is worth one-fourth of all that was sold, and that they are therefore entitled to one-fourth of the proceeds of the sale, and which seems to have been the views·entertained by the chancery court in the rendition of the decree from which this appeal is prosecuted, and which we would not be inclined to disturb if the grant as to lock 12 is not taken into consideration, as the evidence convincingly shows that lock 15, exclusive of the grant as to lock 12, was worth approximately one-fourth of the combined value of locks 7, 12, 14, and 15. The respondents' theory is that the grant at lock 12 was the most valuable part of the property sold, and that by virtue of the existence of same said lock 12 was worth many times more than all of the other sites combined. This contention would, no doubt, be sound if the existence of the grant be considered as an inseparable asset and for the purpose of enhancing ,the value of lock 12, and thereby diminishing the value of the other locks or sites upon a ratio or comparative value basis, but, owing to the facts and conditions connected .with the joint venture of the parties and the negotiations between them from the original acquirement of the sites until the final sale of same in 1912, we do not think that it was their intention that the grant as to lock 12 would so augment the value of same as to give it a superior value upon the relative value basis as to practically destroy the value of the·other sites in case of a sale under a comparative value basis, and thus make them an insignificant part of the subject of the 1912 sale. While it is doubtful that the said sale could have been made without the grant, it is also doubtful if it could have been made had not site 15 been included. We therefore think that the grant should have ·been treated as a separate and distinct asset or property in the nature of a betterment or improvement, and that the value of same should be deducted from the purchase price before a division is made between the respective sites. Capt. Lay testified that the estimated value of the grant was $100,000, and which estimated value does not seem to have been questioned, notwithstanding it may be regarded as a mere intangible asset, and which we do not consider an unreasonable valuation when compared with the price brought by the entire property, including said grant. It is true we have estimates as to the value of the respective sites which take little or no account of the grant as to lock 12, but we are bound to know that the said grant was a valuable factor and formed a conspicuous part in the sale, and ·while it should not be used to enhance the value of lock 12 so as to reduce the value of the other sites to insignificant proportions, as estimated by some of respondents' witnesses, it should be considered as forming a part of ·the con-

sideration of the sale, and its value should be deducted before the Wetumpka stockholders are to participate in the distribution of the proceeds. We therefore find that the value of the grant was $100,000, and which should be deducted from the purchase price under the sale of 1912. With the grant eliminated, we think that the Wetumpka interest, that is, site 15, is fairly worth approximately one-fourth 'of all the sites, and so find. The fact that the ,owners agreed to take a certain amount of stock on a previous occasion in a company which did not materialize is no test that it is not worth the proportionate value placed upon same. From aught that appears, the other sites were not to consume all of the other stock of the proposed corporation, and they, too, may have been considered at a lower estimate than the price realized for same under the sale of 1912. We direct that one-fourth of the value of the grant, that is, $25,000, be turned over by the receiver to the' respondent owners, as per their respective interest in lock 12, less their portion of the cost, and that the rest of the money, bonds, and stock as held by the receiver, being one-fourth of the total consideration of the sale, less the $25,000, being a fourth of the value of the grant, to the owners of the Wetumpka Company, consisting of the complainants and the respondent Lay, in proportion to their respective ownership of same, less their part of the cost.

We do not think that these complainants were under any contractual obligations, express or implied, to pay the cross-complainant G. H.· Schuler any commissions or expenses, and hold that the cross-bill was properly dismissed by the chancery court.

The cost will be equally divided between the complainants and respondents, meaning the cost of the chancery court and this court, one-half to be taxed against the respondents, and one-half against the complainants.

The decree of the chancery court as corrected is affirmed.

·Corrected and affirmed.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.

### On Application for Modification.

PER CURIAM. While we have accepted the evidence of Capt. Lay as to the value of the grant, we think that he meant that it should have been estimated at $100,000 in case of the consummation of the Horne sale, or in the present sale, and that it should have been paid for in kind, that is, in proportion to what the cash, bonds, and common stock bore to each other, and not that the whole sum' should be paid in money, regardless of the sum fo ·be paid in cash for all of the property. There is no proof in the record as to· the value of the bonds or the stock, but, whether above or below par, it is but equitable to all parties that the grant be paid for in cash, bonds, and stock in propor-

tion to the amount they bear to each other as the consideration of the sale. We also overlooked the fact that the interest of Capt. Lay, 28⅓ per cent., in the Wetumpka holdings, was not turned over to the receiver. It is therefore, ordered, adjudged, and decreed that the receiver shall, after deducting the respondents' part of the cost therefrom, turn over to the respondents, former owners of lock 12, money, $2,171.72, bonds, $2,171.72, and stock, $13,573.23, as per face value, less respondents' part of the cost. After this deduction is made from the fund in the hands of the receiver, the same shall be turned over to the complainants according to their respective interests in same, less the complainants' part of the cost.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.

### On Application for Modification by the Appellant.

PER CURIAM. We are not inclined to recede from the last holding that the compensation for the grant should be in money, bonds, and stock in the proportion designated, but, as it has been brought to our attention that the denomination of the bonds is such that the receiver cannot literally comply with the decree, we will remand this cause in order that the spirit and purpose of the decree may be complied with by the lower court. In other words, if the bonds are of the denomination of $1,000 each, the receiver can turn over to these respondents two of said bonds, and if the parties cannot agree upon the settlement of their interest in the third bond, the register will sell same and divide the proceeds, giving the respondents such interest in same as $171.72 bears to $1,000, and a similar rule may be pursued as to any fractional interest that the respondents may have in the common stock held by the receiver.

Corrected and affirmed, but remanded for such supplemental orders as may be necessary to carry out the decree of this court.